UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

YAZAN SALEH,

    Plaintiff,

CASE NO.: 0:18cv61783

-vs-

JPMORGAN CHASE & CO.,

    Defendant.
_____/

## COMPLAINT

1. Plaintiff alleges JPMORGAN CHASE & CO. "robo-called" him more than 50 times in stark violation of the Telephone Consumer Protection Act, 47 U.S.C. §227 *et seq.* ("TCPA").

## INTRODUCTION

2. "Robocalls" are the #1 consumer complaint in America today.

3. The FTC reported over 3.2 million complaints about robocalls in 2014, of which almost half (1,678,433) occurred after the consumer had already requested that the company stop calling. Federal Trade Commission, National Do Not Call Registry Data Book, FY 2014, at 5 (Nov. 2014). Since this report, of the number of complaints have increased. Robocalls are very inexpensive to make. As was noted in a Senate hearing on the subject: "With such a cheap and scalable business model, bad actors can blast literally tens of millions of illegal robocalls over the course of a single day at less than 1 cent per minute." Senate Hearing at 5.

4. According to the Federal Communications Commission (FCC), "Unwanted calls

and texts are the number one complaint to the FCC. There are thousands of complaints to the FCC every month on both telemarketing and robocalls. The FCC received more than 215,000 TCPA complaints in 2014." https://www.fcc.gov/document/fact-sheet-consumer-protection-proposal.

5. The TCPA was enacted to prevent companies like JPMORGAN CHASE & CO. from invading American citizens' privacy and prevent illegal robocalls.

6. "The TCPA is designed to protect individual consumers from receiving intrusive and unwanted telephone calls." *Mims v. Arrow Fin. Servs., LLC*, 132 S. Ct. 740, 745, 181 L.Ed.2d 881 (2012).

7. "Senator Hollings, the TCPA's sponsor, described these calls as 'the scourge of modern civilization, they wake us up in the morning; they interrupt our dinner at night; they force the sick and elderly out of bed; they hound us until we want to rip the telephone out of the wall." 137 Cong. Rec. 30, 821 (1991) Senator Hollings presumably intended to give telephone subscribers another option: telling the autodialers to simply stop calling." *Osario v. State Farm Bank, F.S.B.*, 746 F. 3d 1242 (11th Cir. 2014).

## JURISDICTION AND VENUE

8. Jurisdiction and venue for purposes of this action are appropriate and conferred by 28 U.S.C. §1331.

9. The alleged violations described in the Complaint occurred in Fort Lauderdale, Florida.

## FACTUAL ALLEGATIONS

10. Plaintiff is a natural person, and citizen of the State of Florida, residing in Broward County, Florida.

11. Plaintiff is the "called party." *See Breslow v. Wells Fargo Bank, N.A.*, 755 F. 3d 1265 (11th Cir. 2014) and *Osorio v. State Farm Bank, F.S.B.*, 746 F. 3d 1242 (11th Cir. 2014).

12. Defendant, is a corporation which was formed in Delaware with its principal place

2

of business at 270 park Ave. New York, NY 10017, and conducting business in the state of Florida through its registered agent, CT Corporation System, 1200 South Pine Island Road, Plantation, FL, 33324.

13. Defendant intentionally harassed and abused Plaintiff on numerous occasions by calling several times during one day, and on back to back days, with such a frequency as can be reasonably expected to harass.

14. Defendant attempted to collect a debt from the Plaintiff by this campaign of telephone calls notwithstanding the fact that Plaintiff verbally and explicitly revoked any consent Defendant may have had to contact Plaintiff through his cellular device.

15. Defendant made at least one call to (***) ***-2247 using an "automatic telephone dialing system" (ATDS).

16. Defendant made at least fifty (20) calls to (***) ***-2247 using an ATDS.

17. Defendant made at least one hundred and thirty (50) calls to (***) ***-2247 using an ATDS.

18. Each call the Defendant made to the Plaintiff in the last four years was made using an ATDS.

19. Each call the Defendant made to the Plaintiff was made using an ATDS which has the capacity to store or produce telephone numbers to be called, without human intervention, using a random or sequential number generator; and to dial such numbers as specified by 47 U.S.C §227(a)(1).

20. Furthermore, at least one of the calls at issue were placed by the Defendant using a "prerecorded voice," as specified by the TCPA, 47 U.S.C. § 227 (b)(1)(A).

21. Upon information and belief, Defendant has stipulated in other lawsuits that the telephone system used to call the Plaintiff at use during the relevant time period of this action was in fact an ATDS.

3

22. None of Defendant's telephone calls placed to Plaintiff were for "emergency purposes" as specified in 47 U.S.C. §227(b)(1)(A).

23. Plaintiff is the regular user and subscriber of the cellular telephone number at issue, (***) ***-2247, and was the called party and recipient of Defendant's above described calls.

24. Starting in or about March 2017, Plaintiff started receiving telephone calls to his aforementioned cellular telephone number from Defendant seeking to recover an alleged debt. Upon receipt of the calls from Defendant, Plaintiff's caller ID identified the calls were being initiated from, but not limited to, (614) 890-1025.

25. Immediately upon receipt of the calls, in or about April or May of 2017, due to a ceaseless barrage of daily calls, Plaintiff answered a call from Defendant and informed an agent/representative of the Defendant that their incessant calls were harassing him and demanded that Defendant cease placing calls to his aforementioned cellular telephone number. The calls continued to come in for the next several months.

26. Sometime during the last quarter of 2017, Plaintiff again expressly told an agent for Defendant that he wished to not be contacted. Up to the filing of this Complaint, Defendant continues to call Plaintiff at least weekly and at times even more frequent.

27. Each subsequent call Defendant made to the Plaintiff's after he explicitly revoked any consent Defendant may have had to call Plaintiff's aforementioned cellular telephone number was done so without the "express permission" of the Plaintiff.

28. Each of Plaintiff's conversations with the Defendant demanding an end to the harassment were ignored.

29. Defendant has recorded at least one conversation with the Plaintiff

30. Defendant has recorded numerous conversations with the Plaintiff.

31. Despite actual knowledge of its wrongdoing, and that it did not have Plaintiff's consent, the Defendant continued its barrage of phone calls to Plaintiff's aforementioned cellular

4

telephone number in an attempt to collect an alleged debt.

32. From about January of 2016 through the filing of this Complaint, Defendant placed approximately (50) automated calls to Plaintiff's aforementioned cellular telephone (or as will be established after a thorough review of Defendant's records), despite the Plaintiff revoking any consent Defendant may have had to place calls to his aforementioned cellular telephone number.

33. Defendant's corporate policy and procedures is structured as to continue to call individuals like the Plaintiff, despite these individuals revoking any consent the Defendant may have had.

34. Defendant's, corporate policy and procedures provided no means for the Plaintiff to have his aforementioned cellular number removed from the call list.

35. Defendant has a corporate policy of using an ATDS, prerecorded and/or artificial voice message to collect debts from individuals such as Plaintiff for its financial benefit.

36. As recently acknowledged by Judge Easterbrook of the Seventh Circuit Court of Appeals in Patriotic Veterans, Inc. v. Zoeller, "every call uses some of the phone owner's time and mental energy, both of which are precious."

37. For each call Defendant placed to Plaintiff's cellular telephone without express consent, Plaintiff suffered from the occupation of his cellular telephone line and cellular telephone by unwelcomed calls which made the cellular phone unavailable for legitimate incoming or outgoing calls.

38. For each call Defendant placed to Plaintiff's cellular telephone without express consent, Plaintiff suffered from unnecessary expenditure of his time. The time Plaintiff spent on answered calls was unnecessary because he repeatedly asked for calls to stop and he never gave any consent to receive calls from Defendant to begin with. Additionally, Plaintiff expended unnecessary time for unanswered calls by dealing with notifications and call logs that reflected the

5

unwanted calls. Furthermore, this also impaired the usefulness of these features of Plaintiff's cellular telephone, which are designed to inform the user of important missed communications.

39. Each and every call placed without express consent by Defendant to Plaintiff's cell phone was an injury in the form of a nuisance and annoyance to the Plaintiff.

40. Each and every call Defendant placed to Plaintiff's cellular telephone without express consent resulted in the injury of unnecessary expenditure of Plaintiff's cellular telephone's battery power.

41. Each and every call Defendant placed to Plaintiff's cellular telephone without express consent resulted in the injury of trespass to Plaintiff's chattel, namely his cellular telephone and cellular telephone services.

42. As a result of aforementioned tenacious phone calls and collection efforts, Plaintiff was affected, both personally and individually, as he experienced an invasion of privacy and the intrusion upon his right of seclusion.

43. All of the above mentioned were caused by, and/or directly related to, Defendant's attempts to collect a consumer debt from the Plaintiff.

44. Since January 2015, Defendant has had over 1000 complaints classified under "communications tactics" filed against it with the Consumer Financial Protection Bureau.

45. In the last three (3) years, the Defendant has had 2,425 complaints reported to the Better Business Bureau (BBB)[1], of which 685 of those complaints are classified as being related to "Billing/Collection Issues".

46. Defendant violated the TCPA with respect to the Plaintiff.

47. Defendant willfully or knowingly violated the TCPA with respect to the Plaintiff.

---

[1] Retrieved from https://www.bbb.org/new-york-city/business-reviews/bank/jpmorgan-chase-co-in-new-york-ny-136/reviews-and-complaints on July 31, 2018.

## COUNT I
### (Violation of the TCPA)

48. Plaintiff incorporates Paragraphs one (1) through fifty-two (52).

49. Defendant caused placement of non-emergency telephone calls to Plaintiff's cellular telephone using an ATDS or prerecorded or artificial voice without Plaintiff's prior express consent in violation of federal law, including 47 U.S.C § 227(b)(1)(A)(iii).

50. Defendant willfully and knowingly caused placement of non-emergency telephone calls to Plaintiff's cellular telephone using an ATDS or prerecorded or artificial voice without Plaintiff's prior express consent in violation of federal law, including 47 U.S.C § 227(b)(1)(A)(iii).

**WHEREFORE**, Plaintiff respectfully demands a trial by jury on all issues so triable and judgment against Defendant for statutory damages, punitive damages, actual damages and any other such relief the court may deem just and proper.

**Dated:** July 31, 2018

Respectfully submitted,

/s/ Jibrael S. Hindi                       .
**JIBRAEL S. HINDI, ESQ.**
Florida Bar No.: 118259
E-mail:    jibrael@jibraellaw.com
The Law Offices of Jibrael S. Hindi
110 SE 6th Street, Suite 1744
Fort Lauderdale, Florida 33301
Phone:    954-907-1136